IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CIVIL ACTION NO. 04-4381 |
| v. | : | |
| | : | |
| TODD BROWN | : | CRIMINAL NO. 99-00024-04 |

### REPORT AND RECOMMENDATION

THOMAS J. RUETER                                     June 23, 2005
United States Magistrate Judge

Presently before the court is a pro se Motion to Vacate, Set Aside, or Correct

Sentence (Doc. No. 132) pursuant to 28 U.S.C. § 2255.  For the reasons that follow, the court

recommends that the motion be denied.

I.      **BACKGROUND**

On March 31, 1999, the defendant, pursuant to a plea agreement, pled guilty to

conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371 (Count One); aiding

and abetting an armed bank robbery, in violation of Title 18 U.S.C. §§ 2113(d) and 2 (Count

Two); aiding and abetting the carrying and use of a firearm during a crime of violence, in

violation of 18 U.S.C. §§ 924(c)(1) and 2 (Count Three); conspiracy to commit armed bank

robbery, in violation of 18 U.S.C. § 371 (Count Seven); aiding and abetting the carrying and use

of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1) and (2) (Count

Nine) of the Superseding Indictment.  As part of the plea agreement, defendant agreed to

cooperate with the government.

During the guilty plea colloquy before the late Honorable James McGirr Kelly, the

Assistant United States Attorney set forth the following factual basis for the defendant's guilty

plea:

**Prosecutor**:   If this case were to proceed to trial, the government would introduce through the testimony of witnesses and introduction of exhibits the following facts.  First, on June 21, 1995 at approximately 9:10 a.m., the PNC Bank, a bank whose deposits were insured by the Federal Deposit Insurance Corporation located at 330 Packer Avenue in Philadelphia, Pennsylvania was robbed by Gary Maurice Hutt and Darnell Jones.  Upon entering the bank, they went to the teller counters.  Hutt confronted the individual he believed to be the bank manager and directed this individual to take him to the vault.  Once in the vault, Hutt grabbed several bags of money and then he and Jones made there [sic] escape.  The total of approximately $507,100 was taken from the PNC Bank during the armed bank robbery.  This money was split three ways between Darnell Jones, Gary Maurice Hutt and Todd Brown.  Brown participated in the planning of the armed bank robbery with Hutt and Jones.  During the course of the arm [sic] bank robbery, Hutt pointed his firearm at a bank employee who was on a telephone and stated what do you think you're doing and the bank employee then dropped the telephone and raised her hands.  Both Hutt and Jones fled the bank using [a] motorcycle and escaped on a motorcycle.

On October 6, 1996, Lamont Hosey and George McLaughlin entered the First Security Federal Savings Bank, at Philadelphia, Pennsylvania, a bank whose deposits were insured by the Federal Deposit Insurance Corporation brandishing firearms during an armed robbery of the bank.

The bank robbery occurred at approximately 9:27 a.m.  McLaughlin entered the manager's office where bank employees were having a conference.  Hosey headed directly to the teller counters at gun point and ordered the four employees to the manager's office and directed the bank manager to open the vault and told the other employees to lie down on the ground.

The bank manager was unable to open the safe and informed McLaughlin of this fact at which point McLaughlin threatened to shoot the manger and ordered a bag to be filled with currency.  A total of $9,783, approximately, was taken during the armed bank robbery.

After unsuccessfully attempting to get into the safe, at approximately 9:30 a.m., both McLaughlin and Hosey fled the

bank and entered into a red colored 1996 Oldsmobile parked adjacent to the bank driven by defendant Todd Brown.
At approximately 9:30 a.m., a uniformed police officer pulled into the bank parking lot in a marked patrol car on routine patrol and observed McLaughlin and Hosey exiting the bank.  The officer gave chase.

At the Glendale Apartments parking lot, Philadelphia, Pennsylvania, McLaughlin and Hosey exited the 1996 Oldsmobile and ran to a white 1997 Dodge Caravan driven by Gary Maurice Hutt.  With Hutt driving the Caravan, the vehicle exited the parking lot and additional police units joined the pursuit in the vicinity of Northeast High School in Philadelphia, Pennsylvania.  McLaughlin fired several shots from a rifle at the pursuing police, striking one vehicle and disabling another vehicle.  McLaughlin fired additional rounds which shattered the front windshield which resulted in injuries to the police officer who was taken to the hospital and later released.

The van encountered heavy vehicle traffic while on Roosevelt Boulevard and struck a Bell Atlantic Chevrolet work van.  McLaughlin, Hosey, Hutt and Brown attempted to make their get away on foot.  Brown was hit immediately in the upper torso by gun fire from a Philadelphia Police Officer as he exited the van.  McLaughlin was also shot in the scramble by a Philadelphia Police Officer.  All four defendants, McLaughlin, Hosey, Hutt and Brown were arrested.

Approximately $9,770 in United States currency was recovered from the van.  The currency was bundled in paper bank bands stamped, "The First Security Federal Bank" on each and each band was marked with the initials of the teller of the bank.  All four individuals that is McLaughlin and Hutt, Hosey and Brown had planned the armed bank robbery of The First Security Federal Bank and met and discussed the armed bank robbery including the use of Hutt in the vehicle as a switch car driver, the use of firearms to be used and brandished during the happening of the armed bank robbery.  The use of gun and Hosey and McLaughlin entering the bank and committing the actual armed bank robbery.

(N.T., 3/31/99 at 29-32).

3

The defendant agreed with the government's statement of the facts and did not object to the Presentence Investigation Report. Id. at 33. Brown faced an effective sentencing guideline range of 397-421 months imprisonment. However, the district court granted the government's motion for downward departure for substantial assistance, pursuant to both 18 U.S.C. § 3553(a) and U.S.S.G. § 5K1.1. Consequently, on September 10, 2002, Judge Kelly sentenced defendant to a total of 200 months imprisonment, five years supervised release, restitution of $507,100 and a $600 special assessment.

Defendant appealed his sentence to the Court of Appeals for the Third Circuit. The defendant's appointed appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating that he was unable to identify any non-frivolous issues for review. By an unpublished opinion filed on November 19, 2003, the court found that any claim of error to be raised on appeal would be frivolous and allowed counsel to withdraw. The court affirmed the sentence of conviction and judgment. United States v. Brown, No. 02-3660, 2003 WL 22725533 (3d Cir. Nov. 19, 2003). Defendant did not file a petition for a writ of certiorari with the Supreme Court of the United States.

## II.   DISCUSSION

On September 29, 2004, defendant filed his Motion to Vacate, Set Aside, or Correct Sentence, pursuant 28 U.S.C. § 2255. He alleges three grounds for relief: (1) denial of effective assistance of counsel because his counsel failed to request a downward departure under the Sentencing Guidelines due to his physical condition under U.S.S.G. § 5H1.4, as a result of being shot by the police while fleeing from the police prior to his arrest on October 6, 1998; (2) counsel was ineffective for failing to contest the restitution order imposed at sentencing; and (3)

4

the trial court improperly imposed enhancements under the Sentencing Guidelines based upon facts not found by a jury or acknowledged by the defendant in the plea agreement in contravention to the principles established in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).

A.      **Standard for Ineffective Assistance Claims**

Defendant raised two claims of ineffective assistance of counsel.  Before the court addresses the specifics of these claims, the court will review the standards used to evaluate an ineffective assistance claim.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court set forth a two prong test that a petitioner must satisfy before a court will find that counsel did not provide effective assistance.  Under the <u>Strickland</u> test, a petitioner must show: (1) that his attorney's representation fell well below an objective standard of reasonableness; and (2) that there exists a reasonable probability that, barring counsel's ineffectiveness, the result of the proceeding would have been different.  <u>Id.</u> at 688-96.  To satisfy the first prong of the <u>Strickland</u> test, a petitioner is required to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id.</u> at 687.  In evaluating counsel's performance, a reviewing court should be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  <u>Id.</u> at 689.  Moreover, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  <u>Id.</u> (citation omitted).

To satisfy the second prong of the Strickland test, a petitioner must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. Id. It follows that counsel cannot be ineffective for failing to pursue meritless claims or objections. United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999); United States v. Fulford, 825 F.2d 3, 9 (3d Cir. 1987). In such a situation, the second prong of the Strickland test has not been satisfied.

An ineffective assistance of counsel claim raised in a Section 2255 motion should be denied without an evidentiary hearing when the record conclusively shows that the defendant is not entitled to relief. United States v. McCoy, 2005 WL 1322848 at *6 (3d Cir. June 6, 2005). For the reasons stated below, the court finds the record conclusively shows that the two ineffectiveness of counsel claims are without merit. Thus, the two claims should be denied without a hearing.

## III.   DEFENDANT'S CLAIMS

### 1.   Counsel's Failure to Request a Downward Departure Due to Defendant's Physical Condition.

At sentencing, the court granted the government's motion for departure to reflect the defendant's cooperation with law enforcement authorities. In addition, defense counsel moved for a downward departure to reflect the defendant's post arrest rehabilitation. See Defendant's Sentencing Memorandum (Doc No. 75) at 4-10; N.T., 9/10/02 at 20-21. In support of his motion, defendant's counsel cited the physical injuries defendant suffered from the

gunshot wound he incurred in the shoot-out with the police.  Defendant's counsel wrote the

following:

> Todd Brown has managed to redefine himself since his arrest.  He began
> his road to rehabilitation by engaging in cooperation that has led to the
> successful prosecution of bank robbers and murders [sic] in several
> jurisdictions.  Moreover, each day has been a painful reminder of his
> crime.  As the court is aware, Mr. Brown was almost killed during the
> instant offense.  His gunshot wound has left him with serious kidney
> problems, blood in his urine, a stint [sic] from his kidney to his urethra.
>
> Despite his tremendous pain, Mr. Brown dedicated himself to his
> rehabilitation.  In spite of the constant shuttling from institution to
> institution, he found time to successfully complete anger management
> courses, drug and alcohol courses and a decision making course.

Sentencing Memo. at 9.  Furthermore, at the sentencing hearing, counsel argued that defendant

had turned his life around, after his "brush with death."  N.T., 9/10/02 at 19.  Defense counsel

also presented two witnesses who testified that the defendant came "close to death" as a result of

being shot.  Id. at 14-15.  In his own statement to the court, the defendant described his

experience of having been "almost . . . killed" and not being able "to talk or eat" and having

"damaged kidneys."  Id. at 22.  Likewise, the Presentence Investigation Report ("PSR") reported

the defendant's complaints about his medical problems:

> The subject reports that he suffers from multiple medical problems related
> to the gunshot wound he sustained on October 6, 1998.  He has a stint [sic]
> in his kidney due to a urinary tract infection and urinates blood.  He also
> suffers from high blood pressure for which he is prescribed medicine.

PSR at ¶ 62.

At sentencing, the government opposed the defendant's motion for downward

departure based on post-arrest rehabilitative efforts (N.T., 9/10/02 at 20).  However, the court

decided to "make" the defendant's rehabilitative efforts "part of the downward departure,

because quite frankly, as [defense counsel] has pointed out, it was exceptional."  Id. at 21.  As

noted earlier, the court departed more than fifty percent downward from the guideline range of

397-421 months imprisonment.

   After careful consideration of the above facts, the court concludes that counsel

was not ineffective for failing to move for departure on the specific grounds of defendant's poor

physical health.  The court reaches this conclusion for two reasons.  First, any motion for

departure based on physical condition would have been meritless.  The physical condition of a

defendant "is a discouraged factor for downward departure, but it may be considered if the

impairment is extraordinary."  United States v. Parker, 2002 WL 32341775, at *4 (E.D. Pa. Jan.

4, 2002) (citing U.S.S.G. § 5H1.4).  See also United States v. Iannone, 184 F.3d 214, 227 n.10

(3d Cir. 1999) (listing physical condition as a discouraged basis for departure).

   To establish a departure on this ground, the defendant "must prove by medical

evidence that the Bureau of Prisons cannot adequately provide for his health care needs."  Parker

at *4.  See also United States v. Hernandez, 89 F. Supp. 2d 612, 616 (E.D. Pa. 2000) ("If the

Bureau of Prisons can adequately provide for a defendant's health care needs, courts have been

reluctant to grant departures on the basis of ill health.").  Here, there is no suggestion that

petitioner's physical problems are so debilitating that the Bureau of Prisons has been unable to

care for him adequately.

   Second, the defendant suffered no prejudice.  As described above, Judge Kelly

considered the defendant's medical problems when he granted a substantial departure from the

Guideline sentence because of the defendant's cooperation with the government and post-

rehabilitative efforts.  Counsel brought to the court's attention the defendant's medical problems

when he argued for a substantial departure from the Guidelines.  It is highly unlikely that the sentence would have been different had defense counsel made a separate motion for departure based solely on the physical condition of the defendant.  Accordingly, petitioner's first claim of ineffective assistance of counsel should be denied.

2.      **Counsel Was Ineffective for Not Objecting to the Restitution Order.**

Defendant's second ground for relief is that his counsel was ineffective for failing to contest the restitution order imposed at sentencing.  Defendant argues that Judge Kelly improperly ordered him to pay the full amount of $507,100 in restitution which was the amount of money taken during the June 21, 1995 bank robbery.  Defendant claims that he only should have been ordered to pay $169,100, that is, his share of the proceeds from the bank robbery.

Counsel was not ineffective for failing to object to the restitution order because such an objection was meritless.  Defendant pled guilty to Count One of the Superseding Indictment which charged him with a conspiracy to commit armed bank robbery of the PNC Bank on June 21, 1995.  As he admitted during the guilty plea colloquy, a total of $507,100 was taken from the bank and the money was split three ways between the defendant and his two co-conspirators.  (N.T., 3/31/99 at 30).  It is well established that "[if] more than . . . [one] defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution."  18 U.S.C. § 3664(h).  See also United States v. Diaz, 245 F.3d 294, 312 (3d Cir. 2001) ("A District Court may . . . impose joint and several liability on multiple defendants for restitution, permitting the victim to recover its losses from all or some of the wrongdoers"); United States v. Alas, 196 F.3d 1250, 1251 (11th Cir. 1999) ("Where a defendant pleads guilty or is convicted of conspiracy, the district court may order restitution for all losses

9

which resulted from the conspiracy."); United States v. Hunter, 52 F.3d 489, 495 (3d Cir. 1995)

(Joint and several liability does not "have to mirror the precise culpability of each co-defendant

when imposing restitution.").

Therefore, defendant's second claim for relief should be denied.

**3.      Unconstitutional Application of Enhancements Under the Sentencing Guidelines.**

Petitioner's final claim is that certain enhancements that were applied under the

Sentencing Guidelines were unconstitutional because the facts supporting the enhancements were

neither found by the jury nor were they admitted by the defendant.  Motion to Vacate (Doc. No.

128) at 14-19.  In support of his argument, petitioner relies upon Blakely v. Washington, 124 S.

Ct. 2531 (2004).

Blakely was decided on June 24, 2004.  In that case, the Court held that

Washington State's determinate sentencing scheme, a scheme similar to the Federal Sentencing

Guidelines, violated the Sixth Amendment right to a jury trial.  Blakely, 124 S. Ct. at 2538.  The

Court held that it was improper for the state's judges to impose sentences that were not based

solely on facts reflected in the verdict of the jury or admitted by the defendant, and to use a

preponderance of the evidence standard to find the facts necessary to that imposition.  Id. at

2536-39.

On January 12, 2005, after the defendant filed his Section 2255 motion, the Court

in United States v. Booker, concluded that the holding in Blakely applies to the Federal

Sentencing Guidelines.  125 S. Ct. 738, 755 (2005).  In an opinion authored by Justice Stevens,

the Court held that the Guidelines were unconstitutional because they allowed judges to find

facts that lead to a greater sentence than that authorized by the facts established by a plea of guilt or a jury verdict.  Id. at 746-56.  In a second opinion, authored by Justice Breyer, the Court held that henceforth the Guidelines would be advisory, not mandatory.  Id. at 756-69.

Defendant's claim for relief should be interpreted as being based solely on Booker since Blakely did not invalidate the Federal Guideline System and Booker established a new rule for the federal system.[1]  However, defendant's claim based on Booker must be denied because that decision was issued after defendant's conviction became final and Booker does not apply retroactively to cases on collateral review.  Defendant's conviction became final on February 20, 2004, ninety days after the Court of Appeals affirmed his conviction.  See Kapral v. United States, 166 F.3d 565, 572 (3d Cir. 1999) (explaining that when a defendant does not seek a writ of certiorari, the judgment of conviction becomes final upon the expiration of the time allowed for certiorari review).  This date is eleven months prior to the issue in Booker.  In Lloyd v. United States, our Court of Appeals held that the Supreme Court's decision in Booker did not apply retroactively to cases on collateral review.  407 F.3d 608, 614 (3d Cir. 2005).  Accordingly, the defendant's motion must be denied.

---

[1]    As noted by our Court of Appeals, Booker governs federal sentencing claims based on Blakely since Blakely "reserved decision about the status of the Federal Sentencing Guidelines, and Booker established a new rule for the federal system."  Lloyd, 407 F.3d at 611 n.1.

11

The court makes the following:

## R E C O M M E N D A T I O N

AND NOW, this 23rd day of June, 2005, it is respectfully recommended that the

Motion to Vacate, Set Aside, or Correct Sentence be **DENIED** and that <u>no</u> certificate of

appealabilty be granted.[2]


BY THE COURT:


_____

THOMAS J. RUETER
United States Magistrate Judge


---

[2]     The COA should be denied because petitioner has not shown that reasonable jurists could debate whether his petition should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further.  <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

12